Argued May 6, modified June 8, rehearing denied September 14, 1915.

## UNION CREDIT ASSN. *v*. CORSON.

(149 Pac. 318.)

**Fraudulent Conveyances—Elements of Fraud—Transfer to Co-owner.**

1.  Where plaintiff's debtor and another jointly owned an equity in certain land, the payment on which was due, and the debtor could not pay his share thereof, an agreement whereby he conveyed his interest to his co-owner, who mortgaged the land to raise the money necessary to complete the payment, and gave the debtor a contract

to convey his interest to him upon his paying his share of the purchase price, shows no intention to defraud plaintiff, since his debtor's equity was still subject to the payment of his debt.

**Judgment—Lien—Equity.**

2.  The fact that plaintiff had a judgment against his debtor which was no lien upon the debtor's equity in the land gave him no rights thereto superior to those of the co-owner.

**Creditor's Suit—Conditions Precedent—Recovery of Judgment.**

3.  A creditor cannot maintain a creditor's bill to subject his debtor's equity in land to the payment of the debt before reducing his debt to judgment at law.

[As to demands which will support creditor's suits, see note in 66 Am. St. Rep. 271.]

**Payment—Application—Unsecured Debt.**

Where one co-owner of land was indebted to the other, the proceeds of sales by the latter will be applied to the unsecured portion of the debt, not to that secured on the land, in the absence of specific directions by the debtor for the application.

From Malheur: DALTON BIGGS, Judge.

This is a suit by the Union Credit Association, a corporation, against J. M. P. Corson and John W. Corson, and others. From a decree in favor of plaintiff, the named defendants appeal.          MODIFIED.

For appellants there was a brief over the names of *Mr. John W. Corson, Mr. George E. Davis* and *Messrs. McCulloch & Wood,* with an oral argument by *Mr. Corson.*

For respondent there was a brief and an oral argument by *Mr. H. C. Eastham.*

In Banc. MR. JUSTICE McBRIDE delivered the opinion of the court.

This was a creditor's bill to subject certain realty held by defendants to the lien of plaintiff's judgment. The pleadings are lengthy. Instead of giving them in detail, we give the facts as we find them from the testimony. On October 24, 1908, the defendant Gar-

rett and one Dills entered into a contract with L. J. Hadley to purchase certain lands described in the complaint for the sum of $7,700, paying $3,000 in cash, and agreeing to pay $4,700, with interest, upon the payment of which as agreed they were to receive a deed. Of the $3,000 paid down Garrett paid $2,000 and Dills $1,000, and it was understood that Garrett was to have a two-thirds interest, and Dills a one-third interest. Thereafter, on January 20, 1910, Mrs. Corson purchased one half of Garrett's interest for the sum of $1,000, and later purchased Dills' interest for $1,500; thus becoming the owner of a two-thirds interest in the contract for the purchase of the property, which at some date not disclosed in the testimony was platted into smaller tracts or lots, some of which were sold to various persons; Garrett being the active agent in effecting most of the sales.    On April 13, 1911, plaintiff began an action at law against Garrett to recover upon a promissory note for $870, and interest, and upon July 10th recovered judgment for the amount claimed. On May 11, 1911, plaintiff began a suit against Garrett setting up its claim against him and the pendency of the action to recover it, and alleging that Garrett was the owner of an equity in said lands, but that the legal title was in Hadley, subject to the payment to him by Garrett and Dills of the balance of the purchase price, to wit, about $3,000, with accrued interest; that Garrett had abandoned his residence in Oregon, and had no property in the state or elsewhere which could be subjected to the payment of plaintiff's claim, except his interest in the Hadley property; and that, unless restrained, he would sell and dispose of the same with intent to defraud his creditors.    The complaint set forth every fact necessary to constitute a good credi-

tor's bill, except the fact of having obtained judgment in its action at law, and prayed for the appointment of a receiver to take and hold Garrett's interest in the property until the action at law should be determined, and that in the meantime Garrett should be enjoined from in any manner conveying away, dealing with, or encumbering the property or the Hadley contract during the pendency of the action at law. The restraining order was issued, and J. P. Dunaway was appointed receiver, but, beyond demanding possession of the property from Garrett and Hadley, he did nothing with respect to the premises, having no actual possession thereof. On October 30, 1911, Dunaway came into court and asked for and obtained an order restraining Mr. and Mrs. Corson from in any way dealing with the property in dispute, which order was dissolved on November 11th. On October 24, 1911, this being the last day specified in the Hadley, Garrett, and Dills contract for the payment of the balance of the purchase money, Mrs. Corson, in order to close the matter, was compelled to pay the whole sum, amounting to $3,385, $2,000 of which she borrowed from George A. Brown, and $1,385 from the First National Bank of Vale. At this time Hadley was very importunate for the payment of the money due him, and threatened to declare the contract forfeited if payment was not immediately made. For some reason Mr. Brown did not wish to deal with Garrett, so, in order to obtain the money, it was arranged that Garrett should convey his one-third interest to Mrs. Corson, who should then execute a mortgage to Brown upon the whole tract. This was done; Mrs. Corson giving Garrett a contract whereby she agreed to convey to him a half interest in the property for the sum of

$2,140, to be paid on or before April 23, 1912, with interest from date at 10 per cent per annum, Garrett to assume and pay one half of the $2,000 mortgage to Brown and one half of the tax assessments upon the property. After this agreement had been executed, and before Mrs. Corson had completed the loan from Brown, Garrett suggested that, if he paid $2,140 for the property and half the mortgage, he would be paying $1,000 too much; and thereupon, as the bank was about to close, Mrs. Corson, to save redrafting the contract, gave him a receipt for $1,000 to apply on it, making his actual indebtedness in that behalf $1,140. There is no evidence that any matters or accounts between Mrs. Corson and Garrett were discussed, considered or adjusted at this time. The sole object of the Corsons and Garrett seems to have been to provide means to meet an immediate emergency; namely, the danger of allowing the time fixed for the final payment to Hadley to expire without the purchasers having complied with the terms of their agreement. Having, by the arrangement with Garrett and Brown and a further loan from the First National Bank of Vale, secured the money for this purpose, Mrs. Corson paid Hadley and secured a deed to the property.

1. Considering her large interest in the land and the danger of litigation likely to have arisen from delay, this, so far from indicating any attempt on her part to defraud plaintiff, seems only to have been a natural and necessary course for her to pursue under all the circumstances. She could not have tendered Hadley two thirds of the balance due, and demanded a conveyance of a two-thirds interest in the land; and the testimony indicates that Brown declined to loan upon any other terms than the arrangement finally agreed

upon. There is no fraud shown or indicated in the transaction.

2. The fact that plaintiff had a judgment against Garrett which was not a lien upon his equity in the contract gave the plaintiff no superior right over Mrs. Corson.

3. The injunction suit begun before judgment was obtained and the appointment of a receiver under it was a void proceeding so far as fixing an equitable lien on the land was concerned. It was an attempt to bring a creditor's bill without first obtaining a judgment at law, and this, under all the authorities, cannot be done: Smith, Equitable Remedies of Creditors, § 27, and cases there cited. It follows that, whatever the efficacy of the restraining order issued against Garrett as to imparting actual notice of plaintiff's claim to the defendant Corson, it had no legal effect if the dealings on Mrs. Corson's part were *bona fide,* of which fact we are satisfied. She had a perfect right to protect her own interests, and in doing so to take the assignment from Garrett of his interest, although she may have known that other persons had equally meritorious claims against him. The transaction between Garrett and Mrs. Corson would hardly seem to prejudice plaintiff's right to subject his equitable interest in the property to the lien of its judgment. Before the transfer Garrett held a one-third interest under the Hadley contract, the whole property being burdened with the amount of the unpaid purchase price, amounting to $3,385. By the transfer to Mrs. Corson he has a half interest; the whole property being burdened by the Brown mortgage for $2,000, and interest, and by the $1,140, and interest, due Mrs. Corson. Plaintiff, after obtaining its judgment, had made

no further move to subject Garrett's interest in the property to a lien or to secure an order of sale until Mrs. Corson had purchased the property. From July 11th until October 30th plaintiff had a judgment which furnished it ample ground to subject Garrett's interest to sale by a proceeding in equity. It seems to have relied upon the futile proceedings begun before the judgment at law was rendered against Garrett to tie up the property indefinitely. We fail to see where it has any equities superior to those of Mrs. Corson, who came forward and put up her money to complete the contract and took the risk of getting it back out of the property. The decree of the court below seems to have been based upon the theory that the agreement of October 24, 1911, constituted an account stated between Mrs. Corson and Garrett, and obliterated any other claims she may have had against him up to that date. This assumption is not supported by the testimony. We think it is fairly shown that at the time this option was given Garrett was indebted to Mrs. Corson in sums which aggregate $3,137, the amount of which indebtedness was unknown at that time. It is also in evidence that Mrs. Corson has received from sales of property since the contract of October 24, 1911, $2,330, and has disbursed of that sum $666.76 on account of the property, leaving a balance on hand of $1,663.24, out of which Garrett should be given a credit of $831.62. The Circuit Court, having concluded that all previous transactions between the parties were settled by the contract of October 24, 1911, placed this $831.62 to Garrett's credit upon the $1,140 admitted on all sides to be due Mrs. Corson from Garrett upon the contract, and gave her a lien upon Garrett's supposed interest for $308.38.

4. But it is only equitable to treat one half the amounts received by Mrs. Corson from sales of property and conditionally due to Garrett as general payments upon his account to be applied in the absence of any specific direction from Garrett or any specific application by her as equity applies such payments; the general rule being that in such cases the payment or credit should be applied first upon the unsecured debt.   This would leave her with a lien upon Garrett's interest in the land amounting to $1,140, with interest at the rate of 10 per cent per annum from October 24, 1911, instead of $308.38, as found in the decree of the Circuit Court.   In our opinion, the Hadley agreement was not an option to purchase, but a sale leaving the legal title to the property in the vendor as security for the payment of the purchase price; and, while the agreement of Garrett and Mrs. Corson is worded differently, yet, considering his previous interest in the property and the purposes for which the conveyance was made, we are satisfied that he has such an interest in it as can be subject to sale in equity for the payment of his debts.

The decree of the Circuit Court will therefore be modified so that the interest of Garrett shall be sold as upon execution, subject, however, to a lien for one half of the amount due upon the Brown mortgage, and out of the proceeds of the sale Mrs. Corson shall first receive the sum of $1,140, with interest at 10 per cent from October 24, 1911; second, there shall be paid to plaintiff the amount of its judgment, costs, and disbursements; and, third, if within 30 days after the rendition of this decree Mrs. Corson elect to pay and shall pay into court the amount of plaintiff's judgment at law against Garrett, and the costs accruing thereon,

she shall have a further decree of this court declaring the amount so paid a lien on Garrett's interest, in addition to the sum of $1,140 due upon the purchase price; further, that she now have decree against Garrett for the balance due her on account of the balance of moneys retained by Garrett and by her expended in his behalf, which amount we fix at $2,306.48, but which sum shall be subject to and subsequent to the lien of plaintiff's judgment and of the Brown mortgage. Neither party shall recover costs either in this court or in the Circuit Court.

MODIFIED.    REHEARING DENIED.